## WILLIAM HOFFMAN v. JAMES D. CAGE.

Where a defendant had not been served, but an attorney appeared for him, so far as to object to the evidence on account of variance, and to force a plaintiff to take a non-suit, the non-suit discharged that party, who was only indorser, and released the attorney from further duty and power in the cause, unless he obtained the express assent of his client to renew the litigation. And an agreement of the attorney to allow judgment to go against the client, not served, did not bind the latter.

The note fell due 9th June, 1861; the suit was commenced 25th November, 1861; no citation was issued against the maker until 17th November, 1865, and no citation ever issued against the indorser; the first stay law was passed 7th December, 1861, the 2d section whereof excludes parties "who have cases now pending in court." (Paschal's Dig., Art. 5127.) The law did not arrest the process, and the court must presume that the plaintiff countermanded its issuance. The liability of the indorser was not fixed. (Paschal's Dig., Art. 229, Note 290.)

The mere institution of the suit, with a suppression of process, does not fix the liability of the indorser. The fixing the liability must have a common-sense interpretation.

The court cannot recognize the existence of the relation of attorney and client until the court had acquired jurisdiction over the party, or the attorney exhibits a warrant of authority.

ERROR from Harris. The case was tried before Hon. BENJAMIN SHROPSHIRE, one of the district judges.

The suit was upon a note. The petition was filed 25th November, 1861. Citations were issued 17th November, 1865, and served next day upon Riorden. Riorden and Hoffman appeared 27th November, 1865, and filed de-

murrer. Mr. Masterson filed a demurrer and pleas for defendants, which were sustained on the ground of variance, and the plaintiff took a non-suit. The non-suit was afterwards set aside. The subsequent facts are stated in the opinion of the court.

*Jno. H. Manly* and *A. P. & E. W. Thompson*, for plaintiff in error.

*Hill & Hill*, for defendant in error.

Lindsay, J.—The judgment rendered in this case was most obviously, in legal contemplation, nothing but an attempt to give a judgment upon confession, so far as the plaintiff in error is concerned. The suit was originally instituted against the maker and indorser of a note. There was an impetration and service of the writ, or citation, upon the maker of the note; but no citation was ever sued out and served upon the indorser. In consequence of a variance between the note offered in proof at the trial and the allegations in the petition, the plaintiff in the court below suffered a non-suit. Although an attorney of the court set up a defense for the indorser, which might be supposed to operate as an appearance for him, yet, when the non-suit was taken, it discharged the indorser and released the attorney from further duty in that cause, without the express assent of the client to renew the litigation. By the non-suit the plaintiff was compellable to commence his action *de novo*, unless the defendant in person gave his consent to the restoration and further prosecution of the original suit.

There is nothing in the relation of attorney and client which will authorize the attorney, when the obvious purpose of his employment has been accomplished, to reimpose the burden or obligation upon him from which he has been discharged. Hence, we conclude that the agree-

ment between the attorneys, to reinstate and redocket the cause for further trial, was not binding upon the indorser, without his consent expressly given and appearing in the record. The agreement created new obligations, and imposed new liabilities upon the indorser, to which he was no party in fact or in law, expressly or impliedly. He is consequently not bound by it.

The judgment of the court was, upon the reinstatement of the cause, rendered against the indorser without process, without suit, simply upon an agreement of the original attorneys to the record; and, for aught that appears, without his knowledge. Even if the steps had been taken with his knowledge they would have been obviously defective, because in violation of the policy of law. The judgment given was upon the agreement of the attorneys and in conformity with his stipulations, and this, too, after the jurisdiction of the court had been ousted by the non-suit.

The judgment was nothing else, then, but a judgment by confession on the original cause of action, according to the terms of the agreement. It was therefore a judgment of confession by the attorney not warranted by the statute, and in contravention of the policy of the law. Neither the party himself nor his attorney can confess judgment, unless the justness of the debt is sworn to. And when a judgment is confessed by attorney, the warrant of attorney must be filed. This error is sufficient to reverse the case.

But there is another errror assigned, which we regard as well taken, and is sufficient to authorize the dismissal of the case as against the indorser. It is the laches of, or failure to use due diligence by, the indorsee, to fix the liability of the indorser. The note sued on was executed on the 9th day of January, 1861, indorsed the same day, and was payable on or before the 27th day of June, 1861. The suit was instituted on the 25th day of November, 1861, and the citation was not issued against the maker until the 17th day of November, 1865, and has never issued against

the indorser up to this time. The suit was commenced twelve days before the passage of the first stay law, which was enacted on the 7th day of December, 1861. The suit was then pending in court. And that law, in its 2d section, provided, that the act should not apply "to parties who have cases now pending in the courts," which authorized the party plaintiff to have his process issued, in order to give the indorser notice, and thus fix his liability; which was the object and policy of the statute, requiring suit to be brought in such cases at the first term of the court to which suit can be brought after the right of action accrues, or by showing good cause for failure to do so when brought at the second term. The party's right to proceed to fix that liability was not arrested by the stay law. The citation was not interdicted by that law. The law did not arrest the process; and we are bound to presume that the plaintiff himself countermanded its issuance, and thus failed to use the diligence necessary to give notice to the indorser of the non-payment of the note.

The judgment of the court below is reversed as to the plaintiff in error, and ordered to be

DISMISSED.

The defendant in error moved to reconsider.

LINDSAY, J.—We have very carefully examined the grounds and the reasons presented by the counsel for the defendant in error for a rehearing, and re-examined the legal positions assumed in the opinion delivered in the case. After the most attentive consideration which we have been enabled to give them, we can find no sufficient cause for a reconsideration of the points involved in the case.

We think the attorneys for the defendant in error, in the view presented by them, ignore, or, rather, entirely overlook, the purpose and policy of the law in requiring suit

upon an indorsed note to be brought to the first term of the
court, to fix the liability of the indorser. This legislative
enactment was intended as a substitute for protest, accord-
ing to the principles of mercantile law. The primary object
of the law was to give notice to the indorser of the failure
of the maker to make payment. It cannot be said this is
done by the mere institution of proceedings, with a suppres-
sion of process, the means provided, by which the indorser
is to receive such notice. The citation is a necessary incident
to the institution of the suit; and the service of that process
is also indispensable to fix the liability of the indorser. For
without it no judgment can be rendered. It may not be
necessary that the legislature should declare, *totidem verbis*,
that the service of citation should fix the liability. Why
was it necessary to sue at all to fix the liability, if the ser-
vice of citation was not necessary? What is the purpose
of the suit, if it is not to give notice to the indorser, in
order that he may have an opportunity to secure himself
against the maker? However unwise legislation may some-
times be, the courts, when called upon to interpret and
construe that legislation, must suppose there was some
specific object contemplated by the law-givers in every
statute which they may enact. In this case, the genius of
invention cannot divine any other object in the law-giver,
in requiring suit to be brought to the first term of the court
to fix the liability of the indorser, than to notify him of the
non-payment, so that he might be enabled to protect himself
through the maker, the real debtor. The judgment in the
case binds equally the maker and the indorser, it is very
true. But what is meant by fixing the liability? It must
have some meaning. It does not certainly mean that the
indorser and the maker simply become joint obligors to the
indorser. If so, there was no necessity of talking about
fixing the liability in the statute. It is obvious that the
legislature, without setting forth all the legal incidents of a
suit in the statute, and defining at what particular step—

whether the writing out of the petition by the attorney, the superscription upon it by the clerk "filed," the entrance of the case upon the docket, the marking and numbering of the case, the issuance of the citation, or its service and return—the liability should commence, has left the matter to be determined by the courts from a common-sense view of the objects and policy of the law. It is insisted in the petition for rehearing that the law of the 7th December, 1861, did apply to suits or cases then pending, unless the parties agreed to proceed to trial. True, it arrested the court from proceeding to judgment, unless the parties agreed to go to trial. But how could the parties agree to proceed to trial in an instituted suit, as is contended for, when one of the parties had no knowledge of the existence of such suit? Perhaps if he had had such knowledge, by notice in the service of the citation, he might have agreed to proceed to trial, if for no other purpose, at least for the purpose of making the property of the maker liable for the demand while possibly he might still be solvent. Justice is intended to be secured in the administration of the courts of the country.

The authority of the cases relied upon by the attorneys is fully acknowledged by the court. But it must dissent from the justness of their application to the case. A liberal indulgence is extended to attorneys in practice in the courts of this country. Warrants of attorney are rarely demanded in the prosecution or defense of suits. This indulgence is granted upon the principle that, when a party has been cited to appear, he has a knowledge of the existence of the suit, and that he will be attentive to his interest in the matter. And if an attorney represent him, the court must indulge the presumption that he knows it, and assents to it. But how can such presumption be indulged, when it appears to the court the party has no notice of the pendency of the action even? The truth is, the law cannot contemplate the existence of the relation of lawyer and client in

any given case, until the court has actually acquired jurisdiction over the person of the party, unless that relation is shown by a warrant of attorney. The attorney in this case was without a client, and could not bind or affect the rights of persons who were not in court. In fact, the reasonable and charitable construction to be put upon the joint answer of the indorser, who was not cited to appear, nor was actually in court in person, was, that the attorney, in putting in a defense for his client, the maker of the note, drew up the answer hastily and without due reflection.

We cannot believe the law-givers ever intended that a party holding an indorsed note could fix the liability of the indorser by merely filing a petition in court and letting it there sleep for years, without ordering or obtaining a citation upon it, when the law permitted a citation to be issued, and still expect to hold the indorser responsible. Such an interpretation of the law cannot be consonant with the principles of justice. We therefore feel constrained to refuse the rehearing asked for.

REHEARING REFUSED.